# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

SONDRA L. BOWERS,

      Plaintiff,

                                    **Civil Action 2:18-cv-1704**
                                    **Judge Algenon L. Marbley**
     v.                          **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Sondra L. Bowers ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Response in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 8). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

### I.     BACKGROUND

Plaintiff previously filed several applications for disability benefits. Plaintiff protectively filed her current application for Supplemental Security Income on December 4,

2013. In her current application, Plaintiff alleged a disability onset of August 23, 2013, the day after her most recent Title XVI claim was denied. Plaintiff's application was denied initially on May 19, 2014, and upon reconsideration on October 3, 2014. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Timothy Gates (the "ALJ") held a hearing on May 12, 2016, at which Plaintiff, represented by counsel, appeared and testified. On July 25, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On September 8, 2017, the Appeals Council vacated the July 25, 2016 decision and remanded the case to the ALJ for further consideration of several issues. The ALJ was ordered to offer Plaintiff a new hearing, take any further action needed to complete the administrative record, and issue a new decision. In accordance with the remand order, the administrative record was updated and the ALJ held a *de novo* hearing on February 9, 2018. Plaintiff, represented by counsel, appeared and testified. Vocational Expert John R. Finch (the "VE"), also appeared and testified at the hearing. On March 20, 2018, the ALJ issued a second decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On October 15, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's March 20, 2018 decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff advances two contentions of error. First, Plaintiff contends that the ALJ's decision should be reversed because he failed to provide good reasons for assigning less than controlling weight to the medical opinions of her treating physician, Charles J. Kistler, Jr., D.O. ("Dr. Kistler"). Plaintiff next asserts that the ALJ failed to properly evaluate the opinions of the psychological consultative examiner, Michelle Evans, Ph.D. ("Dr.

Evans").

## II.     RELEVANT MEDICAL RECORDS

Plaintiff's treating physician, Charles J. Kistler, Jr., D.O., provided several opinions in this case.     In 2014, Dr. Kistler completed a form stating that Plaintiff was permanently disabled due to physical and psychological impairments.   (Exhibit B10F, R. at 576.)

On May 2, 2016, Dr. Kistler completed medical source statements regarding Plaintiff's mental and physical limitations.   (Exhibit B31F, R. at 839-41; Exhibit B32F, R. at 841-42.)

In a letter dated February 4, 2018, Dr. Kistler set forth Plaintiff's current medications, diagnoses, and symptoms.   (Exhibit B57F, R. at 1116.)   Dr. Kistler opined that "[f]rom a psychological standpoint, [Plaintiff] is unable to cope with the restrictions of a job situation. She misses significant amounts of work because of medication and doctor visits and ongoing headaches, seizures and neurological problems."   (Exhibit B57F, R. at 1117.)   He further opined, "based on reasonable medical certainty and probability," that Plaintiff "is permanently and totally disabled from any and all sustained remunerative employment from a physical and psychological standpoint based upon the consultative evaluations, her ongoing medical treatment, my treatment of the patient, her history, her surgeries, her failed therapy and rehabilitation."   (*Id*.)   With his February 4, 2018 letter, Dr. Kistler submitted updated medical source statements, dated February 2, 2018, regarding Plaintiff's mental and physical limitations and capabilities.   (Exhibit B57F, R. at 1119-21.)

On February 15, 2018, Dr. Kistler opined that Plaintiff "is unable to do any type of manual work at this time and has continued to be such with her back."   (Exhibit B23E, R. at 477.)

# III.    THE ADMINISTRATIVE DECISION

On March 20, 2018, the ALJ issued his decision.  (R. at 17-54.)   At step one of the sequential evaluation process,[1]  the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 4, 2013, the application date.  (R. at 20.)   At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, status post fusion operations involving segmental instrumentation from L4-S1 and placement of inter-body prosthesis at the L5-S1 level . . .; fibromyalgia; idiopathic peripheral neuropathy diagnosed on September 2, 2015; bipolar disorder; anxiety disorder; post-traumatic stress disorder; and attention deficit hyperactivity disorder."   (R. at 20-30.)   At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

---

1.   Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.   *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

  1.  Is the claimant engaged in substantial gainful activity?

  2.  Does the claimant suffer from one or more severe impairments?

  3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

  4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

  5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 30-32.) The ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> During the period in question from the alleged onset date of August 23, 2013, through September 1, 2015, the day prior to the date her doctor stated it was medically necessary for her to use a cane for stability, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of sedentary work as defined in 20 CFR 416.967(a). The claimant was limited to lifting/carrying no more than a maximum of ten pounds at a time on an occasional basis. She was able to lift/carry objects weighing less than ten pounds on a frequent basis during an eight-hour day. The claimant retained the ability to stand and walk for a total of two hours during an eight-hour day. The claimant had postural limitations that prevented her from climbing ropes/ladders/scaffolds and restricted her to performing the following tasks on an occasional basis during an eight-hour day: climbing stairs/ramps, balance, stoop, kneel, crouch and crawl. The claimant was restricted to overhead reaching on an occasional basis during an eight-hour workday. From an environmental prospective, the claimant was precluded from working around dangerous hazards such as unprotected heights or moving machinery. She was not able to operate a motor vehicle as part of her job duties. In addition, the claimant was restricted to no more than occasional exposure to temperature extremes of hot/cold, humidity, pulmonary irritants of dust, fumes, gases, odors, etc. Secondary to her mental impairments, the claimant was restricted to simple, routine and repetitive tasks with no strict production requirements in a static job setting where changes in work routine are explained in advance. She was limited to occasional interactions with supervisors and the public. The claimant was also limited to occasional interactions with coworkers, but was precluded from performing jobs that required team-based work activities, and/or jobs where supervision or persuasion of others was required to perform the work.
>
> During the period in question since September 2, 2015, the claimant's ability to perform the full range of sedentary work has also been compromised by her need to use one arm to hold an assistive device for standing/walking. In addition to the above-described functional capacity limitations, the undersigned finds that it has been medically necessary for the claimant to use a cane for stability purposes since September 2, 2015.

(R. at 32-33.)

At step four of the sequential process, relying on the VE's testimony, the ALJ found that

even though Plaintiff is unable to perform her past work, she can perform jobs that exist in significant numbers in the national economy.   (R. at 52-53.)   He therefore concluded that Plaintiff was not disabled under the Social Security Act.   (R. at 53-54.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.   The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.   *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).   Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"   *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

As set forth above, Plaintiff asserts that the ALJ erred in evaluating the opinions of her treating physician, Dr. Kistler.   Within this statement of error, Plaintiff contends that the ALJ failed to evaluate and provide good reasons for rejecting Dr. Kistler's opinions contained in a letter dated February 4, 2018 (Exhibit B57F, R. at 1116-17).   The undersigned agrees that the ALJ failed to provide "good reasons" for rejecting Dr. Kistler's February 2018 opinions (contained in Exhibit B57F) and finds that the ALJ's error was not harmless.[2]

As a preliminary matter, the Commissioner's contention that Plaintiff waived any challenge of the ALJ's review of Dr. Kistler's February 2018 opinions is unavailing. (Commissioner's Resp. in Opp'n at n. 5, ECF No. 18.)   The Commissioner fails to acknowledge that Plaintiff explicitly contends that the ALJ did not evaluate or weigh the opinions set forth in Dr. Kistler's February 4, 2018 letter.   (Pl.'s Statement of Errors at 10-11, ECF No. 13 (citing Exhibit B57F, R. at 1116-17).)   The February 4, 2018 letter and February 2, 2018 medical source statements were submitted together as one Exhibit (Exhibit B57E, R. at 1116-23), and the

---

[2] This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error.   Thus, the undersigned need not, and does not, resolve the alternative bases Plaintiff asserts support reversal and remand.

Commissioner acknowledges that the February 4, 2018 letter summarizes the opinions contained in the February 2, 2018 medical source statements. (*See* Commissioner's Resp. in Opp'n at 2-3, ECF No. 18 (stating that Dr. Kistler "promulgated two more opinions in early 2018," and that "[a] few days later, he wrote a memorandum summarizing those opinions. (Tr. 1116-17)").) Accordingly, Plaintiff properly challenged the ALJ's failure to consider Dr. Kistler's February 2018 opinions, located in the record at Exhibit B57F. Nevertheless, even if Plaintiff challenged only the ALJ's consideration of Dr. Kistler's February 4, 2018 letter, the undersigned finds reversible error. As explained below, the ALJ's failure to consider Dr. Kistler's opinion regarding Plaintiff missing significant amounts of work due to her medication, doctor visits, and ongoing headaches, seizures, and neurological problems constitutes reversible error.

The ALJ must consider all medical opinions that he receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case

record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v.*

*Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Here, the ALJ violated the good reason rule when evaluating Dr. Kistler's opinions. The ALJ specifically rejected Dr. Kistler's May 2016 medical source statements (Exhibits B31F and B32F, R. at 839-42) and February 15, 2018 opinion that Plaintiff "is unable to do any type of manual work at this time" (Exhibit B23E, R. at 477), explaining as follows:

> The extreme mental and physical limitations set out in Dr. Kistler's opinions in Exhibits B31F, B32F and B23E are rejected for the reasons discussed above as his assessments are completely unsubstantiated by his own treatment records and by the evidence as a whole.

(R. at 49.) The ALJ completely failed, however, to discuss, weigh, or provide good reasons for rejecting Dr. Kistler's opinions contained in his February 4, 2018 letter (Exhibit B57F, R. at 1116-17) or in his medical source statements dated February 2, 2018 (Exhibit B57F, R. at 1119-21). (*See* R. at 17-53.) The ALJ's failure to address these opinions violates the good reason rule.

Nonetheless, the Sixth Circuit has set forth three possible scenarios that could lead the Court to a finding of harmless error where an ALJ violates the good reason rule. *Wilson*, 378 F.3d at 547. First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id.* Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.* Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not

complied with the terms of the regulation." *Id.*

Here, the ALJ's violation of the good reason rule was not harmless error. First, Dr. Kistler's opinions are neither "patently deficient" nor consistent with the ALJ's decision, and the Commissioner makes no attempt to argue that they are (*see* Commissioner's Resp. in Opp'n at n. 5, ECF No. 18). Instead, the Commissioner summarily argues that "the ALJ properly considered the opinion by referencing the exhibit containing the opinion and referencing the opinion during the hearing, and that he implicitly addressed it when he evaluated the 2016 opinion (which the 2018 opinion largely duplicated)." (Commissioner's Resp. in Opp'n at n. 5, ECF No. 18.) Thus, the Commissioner appears to argue that the ALJ met the goal of § 1527(d)(2) without complying with its procedural requirements. The undersigned disagrees.

In *Hall v. Commissioner of Social Security*, the Sixth Circuit elaborated on how an ALJ might meet the goal of § 1527(d)(2) without complying with the procedural requirements, explaining as follows:

> As applied to this case, the ALJ could have met the goal of providing good reasons by either his analysis of Dr. Caudill's other opinions or his analysis of Hall's back problems in general. Such analyses would perhaps adequately address Dr. Caudill's opinion about Hall's back pain by indirectly attacking the "supportability" of the doctor's opinion, § 404.1527(d)(3), or the "consistency" of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, *see* § 404.1527(d)(2). However, it is critical that, when reviewing the ALJ's reasoning for this purpose, we remember the goals of the procedural safeguard. We are reviewing the 1998 decision to see if it implicitly provides sufficient reasons for the rejection of Dr. Caudill's opinion regarding Hall's back, *see Wilson,* 378 F.3d at 544–45 (discussing purposes of treating-source regulations), not merely whether it indicates that the ALJ did reject Dr. Caudill's opinion.

*Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) (footnotes omitted). Thus, "the equivalent of good reasons for not adopting a treating source's opinion could perhaps be

found in an ALJ's analysis of the ailment addressed by the opinion" or in the ALJ's analysis of the treating physician's other opinions. *Id.* at 464-65. Indeed, "[a]n ALJ may accomplish the goals of th[e] procedural requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (emphasis in original) (citing *Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x 462, 470–72 (6th Cir. 2006); *Hall,* 148 F. App'x at 464–65). In determining whether the ALJ indirectly attacked the treating physician's opinion, "courts look to the ALJ's decision itself, and not other evidence in the record." *Coldiron*, 391 F. App'x at 440.

Here, neither the ALJ's analysis of Dr. Kistler's other opinions nor his analysis of Plaintiff's impairments adequately attack Dr. Kistler's opinion that "Plaintiff misses significant amounts of work because of medication and doctor visits and ongoing headaches, seizures and neurological problems," (R. at 1117).

First, the ALJ's analysis of Dr. Kistler's other opinions does not reveal why he rejected Dr. Kistler's opinion that Plaintiff misses significant amounts of work due to the impact of her medications, doctor visits, and ongoing headaches, seizures, and neurological problems. Dr. Kistler's 2016 Opinions and February 15, 2018 letter, which the ALJ explicitly rejected, do not contain any opinions regarding Plaintiff's attendance at work or the impact of her medications, among other things, on her attendance. Accordingly, the undersigned in not persuaded that the ALJ implicitly rejected this opinion by rejecting Dr. Kistler's other opinions. *See Hall*, 148 F. App'x at 465 (finding that the rejection of treating physician's opinions dealing with very different ailments did not "necessarily indicate why the ALJ rejected the doctor's opinion about

[plaintiff's] back").    Further, none of the medical opinions that the ALJ adopted specifically address Plaintiff missing work or otherwise conflict with Dr. Kistler's opinion on the issue.    (R. at 47-50.)    In addition, the ALJ included in Plaintiff's RFC several of the limitations contained in Dr. Kistler's physical medical source statements, which indicates that he did not find all of Dr. Kistler's opinions to be inconsistent with or unsupported by the record.    For example, consistent with the RFC assessed by the ALJ, Dr. Kistler found that Plaintiff can lift up to 10 pounds occasionally; can occasionally bend, climb, and reach; was restricted from unprotected heights and moving machinery; and was moderately restricted from marked changes in temperature and humidity and exposure to dust, fumes, and gases.[3]  (*Compare* R. at 32-33 *with* R. at 842, 1121.) Given that the ALJ implicitly accepted some of Dr. Kistler's opinions, he should have provided an explanation for his apparent rejection of Dr. Kistler's opinions contained in the February 4, 2018 letter.    *See Hall*, 148 F. App'x at 465 (finding difficulty inferring a reason for ALJ's rejection of treating physician's opinion where the ALJ accepted some of treating physician's opinions and rejected others without explanation); *Tomblin v. Astrue*, No. 1:10-CV-888, 2011 WL 5859204, at *15 (S.D. Ohio Oct. 20, 2011) (finding remand was appropriate where the ALJ accepted portions of treating physician's opinions and failed to discuss others, explaining that the court was unable to discern the reasons for the weight assigned to the treating physician's opinion).    Because the undersigned cannot discern the ALJ's reasons for rejecting Dr. Kistler's February 4, 2018 opinions based on his analysis of Dr. Kistler's other opinions, remand is

---

3  In his February 2, 2018 physical medical source statement, Dr. Kistler found that Plaintiff was completely restricted from exposure to marked changes in temperature and humidity and from driving automotive equipment.    (R. at 1121.)

appropriate.

The ALJ's analysis of the other record evidence also fails to "indirectly" attack the supportability of this opinion or its consistency with other evidence in the record. Indeed, the ALJ's 38-page decision contains no analysis of the impact of Plaintiff's medications or treatment on her ability to attend work. The ALJ acknowledged that Plaintiff takes several medications (*see e.g.* R. at 34, 35, 37, 38, 40, 41, 42, 43, 45), and even that Dr. Rosenthal noted that "several of the claimant's regularly prescribed medications could be contributing to her falls," (R. at 38). Additionally, Dr. Kistler's February 4, 2018 letter provides that Plaintiff's current medications include:

> Prioelipt inhaler, Proventil unit dose, Ditropan for bladder, Phenergan for GI upset, Daypro as an anti-inflammatory, Zocor for cholesterol, Remeron for sleep, Ferrous sulfate for iron, Topamax for mood stabilizer, Theo-24 for breathing, Ventolin inhaler for breathing, Parafon Forte as a muscle relaxant, Lancet and alcohol swabs and strips for elevated blood sugar and Norco 20 mg q.i.d. for pain.

(R. at 1116.) Nonetheless, the ALJ's decision fails to address the impact that Plaintiff's medications may have on her ability to attend work or to otherwise indirectly attack Dr. Kistler's opinion that Plaintiff misses significant amount of work due to, among other things, her medications and doctor visits. Although the ALJ points to objective evidence that may undercut some of Dr. Kistler's opinions, he fails to discuss record evidence that detracts from Dr. Kistler's opinion that Plaintiff would miss significant amounts of work due to medications, doctor visits, and ongoing problems with neurological impairments.

The ALJ's failure to consider the impact of Plaintiff's medication and treatment is significant in this case because Plaintiff has the severe impairment of fibromyalgia. As the Sixth Circuit explained in *Rogers v. Commissioner of Social Security*, the nature of fibromyalgia

renders an over-emphasis on objective findings inappropriate.   486 F.3d 234, 248 (6th Cir.

2007).   In *Rogers*, the Court found that the ALJ erred in assessing the credibility of plaintiff's

subjective complaints, explaining that

> by focusing on purely objective evidence, the ALJ failed to discuss or consider the
> lengthy and frequent course of medical treatment or the nature and extent of that
> treatment, the numerous medications Rogers has been prescribed, the reasons for
> which they were prescribed, or the side effects Rogers testified she experiences
> from those medications.

(*Id.*)   Likewise, here, Plaintiff's medications and the nature and extent of her treatment are

relevant, and the ALJ's failure to consider Dr. Kistler's opinion that Plaintiff would miss work

due to medications, doctor visits, and her ongoing problems is significant.   Moreover, the VE

testified that absenteeism would become work-preclusive with more than one incident per

month.   (R. at 92.)   Under these circumstances, the undersigned cannot find the ALJ's failure to

discuss Dr. Kistler's opinions regarding Plaintiff missing significant amounts of work to be

harmless error.

Finally, the undersigned finds the Commissioner's contention that the ALJ "properly

considered the opinion by referencing the exhibit containing the opinion and referencing the

opinion during the hearing" unavailing.   (Def.'s Resp. in Opp'n at n. 5, ECF No. 18.)   Nothing

in the ALJ's decision or the hearing transcript allows the undersigned to trace the ALJ's path of

reasoning for rejecting Dr. Kistler's February 4, 2018 opinion that Plaintiff misses significant

amounts of work.   The Sixth Circuit has made clear that courts will not "'hesitate to remand

when the Commissioner has not provided 'good reasons' for the weight given to a treating

physician's opinion and we will continue remanding when we encounter opinions from ALJ's

that do not comprehensively set forth the reasons for the weight assigned to a treating

physician's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (citing *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir.2009) (quoting *Wilson,* 378 F.3d at 545)).  Because the ALJ failed to provide good reasons for rejecting Dr. Kistler's February 2018 opinions, and the undersigned cannot otherwise trace his path of reasoning, remand is required.  Accordingly, the undersigned **RECOMMENDS** that the Court sustain Plaintiff's statement of error and **REVERSE** and **REMAND** this case to the Commissioner for further consideration.

## VI.     DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VII.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


  /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE